# ACKERLIND, ADMINISTRATOR OF LIND, v. UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 293.   Argued March 15, 1916.—Decided April 3, 1916.

Notwithstanding the requirements of § 3744, Rev. Stat., requiring contracts made by the Secretaries of War, of the Navy, and of the Interior to be reduced to writing and signed by the contracting parties, reformation of a contract so executed may be required in a proper case as against the United States, as it may be required notwithstanding the provisions of the Statute of Frauds.

Failure of a contractor to read the contract before executing the contract, the terms of which he had previously seen is not enough to debar him from seeking relief by having it properly reformed.

Although the Court of Claims may not have made findings in terms of certain facts which it has plainly assumed in its decision to be true,

if they are not controverted, and they do appear in the record, it is not necessary to send the case back for further finding.

In this case, *held* that a contract for delivery of coal should be reformed by striking out a clause in the printed form which it had been agreed should be, but by mistake of a clerk had not been, stricken out before execution.

When the Government guarantees only a certain depth of water at an unloading dock, the fact that one vessel of greater draft had unloaded at it, does not amount to proof that all vessels of that draft could do so, the Court of Claims having stated that it did not find as a fact there was generally an available depth of over twenty feet; and a claim for demurrage cannot be based on failure to unload vessels of greater draft than twenty feet of water at that dock.

The provision in the Philippine Tariff Act of March 3, 1905, c. 1408, § 15, 33 Stat. 928, 976, exempting from tonnage dues vessels belonging to, or employed in the service of, the United States, does not apply to vessels that are not under the control of the United States. *New Orleans-Belize S. S. Co.* v. *United States,* 239 U. S. 202.

The ground of such exemption being to prevent interference with agencies of the Government, it does not apply to an independent carrier who has simply contracted to deliver freight to the Government.

49 Ct. Cl. 635, reversed in part and affirmed in part.

THE facts, which involve the power of the Court of Claims to reform a contract with the United States and claims for demurrage arising under a contract for delivery of coal, are stated in the opinion.

Mr. *George A. King,* with whom Mr. *William B. King* was on the brief, for appellant.

Mr. *Assistant Attorney General Huston Thompson* for the United States:

The contract should not be reformed, as the alleged oral agreement was merged in the written instrument.

The reformation desired would make a different contract from the one executed, and hence is contrary to § 3744, Rev. Stat.

·The mistake, if any, lacked mutuality, and for this reason the contract should not be reformed.

The Government is not chargeable with demurrage because it guaranteed only 20 feet of water at the wharf.

The vessels employed being in the service of the appellant were not exempt from tonnage dues. *Beach* v. *United States*, 226 U. S. 243, 260; *Clark* v. *United States*, 95 U. S. 539; *Dermott* v. *Jones*, 2 Wall. 1, 7; *Insurance Co.* v. *Mowry*, 96 U. S. 544, 546; *New Orleans S. S. Co.* v. *United States*, 239 U. S. 202; Opinion of the Comptroller of the Treasury; Philippine Tariff Act, 33 Stat. 928, 976; *United States* v. *N. Y. and Porto Rico S. S. Co.*, 239 U. S. 88.

MR. JUSTICE HOLMES delivered the opinion of the court.

The main point at issue in this case is a claim for the reformation of a contract for the transportation of coal from certain ports in the United States to Manila Bay. It is demanded by the claimant upon the following facts. The terms of such contracts are settled by the Bureau of Equipment. A requisition embodying the transaction is then sent to the Bureau of Supplies and Accounts which prepares a formal contract in writing in accordance with Rev. Stat., § 3744. This section makes it the duty of the Secretaries of War, of the Navy, and of the Interior 'to cause and require every contract made by them severally on behalf of the Government, or by their officers under them appointed to make such contracts, to be reduced to writing, and signed by the contracting parties.' In the present case the printed specifications upon which proposals were asked contained the clause "And further that in the event of a cargo arriving before the preceding cargo is discharged, twenty-four (24) hours' notice of arrival shall be given after discharge of each cargo before lay days commence in case of that next arriving." The con-

tractor objected to this clause upon satisfactory grounds and it was agreed that it should be omitted. Through a clerical inadvertence, however, the clause was left in the requisition sent to the Bureau of Supplies and Accounts and the contract was drawn embodying it, and signed by the contractor on March 2, 1905, without careful reading, the precise form having been settled as we have said. This mistake was discovered upon the arrival of several vessels at Cavite, on June 17, 1905, the attention of the Bureau of Equipment was called to it, and the Bureau of Supplies and Accounts was requested to make the necessary change, on June 23. That Bureau notified the contractor that the contract was amended by the omission of the clause. The Government refuses to recognize the amendment, the Court of Claims dismissed the claim for reformation, 49 Ct. Cls. 635, and the claimant appealed to this court.

It hardly is denied and cannot be denied successfully that in a proper case reformation of a contract may be required against the United States notwithstanding the statute that we have quoted, as it may be required notwithstanding the provisions of the Statute of Frauds. *Cramp* v. *United States*, 239 U. S. 221, 230. It is the contract that has been made through the agent authorized to make it that is to be reduced to writing and if a clerk or some other agent makes a mistake we perceive no reason why the writing should not be made to conform to the fact. The contract is not unlawful in the preliminary stage, or even void in a strict sense, but simply not to be enforced against the United States. *United States* v. *N. Y. & Porto Rico S. S. Co.*, 239 U. S. 88. The contract is made with the principal and the several steps are to be regarded as if they all had been taken by him. Here the United States made the contract by the Bureau of Equipment and by its mouth requested the Bureau of Supplies and Accounts to put it on paper and sign it.

What the Bureau of Supplies and Accounts understood is immaterial, it simply followed the requisition of the Bureau of Equipment. There was a mistake made by a clerk in not striking out a printed clause from that requisition. It is as if a principal after making the agreement had taken a printed form and forgotten to draw his pen through the words. The failure of the contractor to read before signing an instrument the terms of which he had seen in print is not enough to debar him from seeking relief. *Equitable Safety Ins. Co.* v. *Hearne,* 20 Wall. 494.

The only ground for hesitation is the purely technical one that the Court of Claims, acting before the decision of *Cramp* v. *United States,* 239 U. S. 221, 232, and probably uncertain whether to send up facts or evidence, has not found in terms certain of the facts that we have stated. It has found that the Acting Chief of the Bureau of Equipment wrote an official letter stating them, and it has assumed them to be true in the decision that it delivered. We understand that they are not controverted if material, and therefore think it unnecessary to send the case back for further findings. The decree of the Court of Claims upon this part of the case will be reversed.

The next question that arises concerns the amount of demurrage to be allowed under the contract as reformed. Undisputed terms of the instrument were: "6. The Government guarantees but twenty (20) feet of water at coaling wharf, Sangley Point. 7. Cargo to be discharged at the rate of four hundred (400) tons per day for such part of cargo as may be necessary to discharge in the bay to enable a vessel of deep draft to go to the wharf, and six hundred (600) tons per day at wharf, Sundays and legal holidays excepted in each instance, or the Government pays demurrage at the rate of eight (8) cents per ton per day on the net registered tonnage of the vessel for any detention caused by the Government (through fault of

its own) not discharging at the above-named rates, it being understood that twenty-four (24) hours' notice of arrival of each cargo under this charter shall be given the commandant before lay days commence." (Then followed the clause stricken out by reformation.) "13. While an average daily discharge of four hundred (400) tons in the stream and six hundred (600) tons at the wharf is guaranteed, the commandant will be instructed to discharge the cargo as expeditiously as practicable with a view of exceeding these rates without working overtime." It is found that one vessel went to the wharf drawing twenty-two feet and six inches, and it is argued that if one could another could, and that under paragraph 13 just quoted, the other vessels should have been docked at that draft and thus have been enabled to deliver 200 tons more a day—that being the difference between wharf and stream. If the argument is correct it would give the claimant $2,217.44 demurrage under the contract as reformed. But as to this it is enough to say that the Court of Claims stated that it did not find the fact of generally available depth of over twenty feet, and therefore it stands unproved in this court.

The only other point argued is that the vessels concerned should not have been required to pay tonnage dues because the Philippine Tariff Act of March 3, 1905, c. 1408, § 15, 33 Stat. ·928, 976, exempts from them "a vessel belonging to or employed in the service of the Government of the United States." But it is a sufficient answer that the words do not mean every vessel that carries a ton or a cargo of coal for the Government but only one that is under the control of the United States as explained in *New Orleans-Belize S. S. Co.* v. *United States,* 239 U. S. 202, 206. The ground of the exemption is to prevent interference with Government agencies. But an independent carrier, such as the contractor was in this case, is not such an agency, and is not employed in the service of the

Government within the meaning of the law.  See *Balti-more Shipbuilding Co.* v. *Baltimore,* 195 U. S. 375, 382. Upon the last two points the judgment of the Court of Claims is affirmed.

*Judgment reversed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration and decision of this case.